FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

2015 FEB 27  P 3: 32

CLERK, US DISTRICT COURT
MIDDLE DIST OF FLORIDA
JACKSONVILLE FLORIDA

Civil Case No.:

| | |
|---|---|
| CHERYL HULSE, on behalf of herself and all others similarly situated, | : |
| | : |
| *Plaintiff*, | : |
| *vs.* | : |
| | : |
| WAL-MART STORES, INC., a Foreign Corporation, | : |
| | : |
| *Defendant.* | : |

3:15-cv-233-J-39mcr

## CLASS ACTION COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES, AND DEMAND FOR JURY TRIAL

Plaintiff, CHERYL HULSE ("Plaintiff"), by and through her undersigned counsel, hereby files this Class Action Complaint, individually, and on behalf of all others similarly situated—and makes these allegations against Defendant, WAL-MART STORES, INC. ("Defendant"), to challenge Defendant's violations of Florida state law based on its unlawful, deceptive, unfair and/or misleading business practices, whereby Plaintiff seeks certification of this matter as a class action, and in support thereof alleges as follows:

### INTRODUCTION

1.      Defendant manufactures, labels, markets, advertises, sells and distributes its Great Value 100% Cranberry Pomegranate Juice (the "Product") to purchasers throughout the State of Florida.

2.      Defendant strategically and purposely misleads the consuming public to believe that the Product is, or at a minimum, primarily consists of, cranberry and pomegranate juice. The Product's label prominently displays the words "CRANBERRY POMEGRANTE," while at the

same time down plays the other words in smaller and thinner font that reveal the juice is actually

a flavored juice blend from concentrate, primarily consisting of water and cheap white grape juice

concentrate, apple juice concentrate, and plum juice concentrate. The names of the cheap juices

are not identified on the front of the label. Cranberries and pomegranates are prominently depicted

on the Product's label, while none of the other cheaper juices are even pictured on the Product's

label.

   3.      The voluntary and affirmative labeling decision to prominently display minor

ingredients (pomegranate and cranberry) in an otherwise primarily water, white grape juice

concentrate, apple juice concentrate, and plum juice concentrate drink is a misleading and unfair

marketing tactic.

   4.      As a result of Defendant's unfair and deceptive practices, Plaintiff, and the Class

purchased the Product under the false impressions that the Product contained the health and

nutritional benefits commonly associated with pomegranate and cranberry juices.

   5.      Every member of the class was exposed to the same misrepresentations and/or

omissions which are prominently displayed on the product packaging, which they read and relied

upon prior to purchasing the product.

   6.      Under Federal and Florida state law, the Product is unlawfully "misbranded" since

the "labeling is false or misleading in any particular". *See* 21 U.S.C. § 343(a); Florida Food Safety

Act § 500 *et seq*; Fla. Stat. §§500.01-500.80 (2014).

   7.      Further, any violation of the Florida Food Safety Act also constitutes violations of

Florida's Consumer Protection Statues §§501.201-501.213 (2014), Florida Deceptive and Unfair

Trade Practice Act, False Advertising pursuant to Fla. Stat. § 817.44 (2014), Negligent

Misrepresentation, and Unjust Enrichment. In this action, Plaintiff asserts claims under these state statutes, as well as under common law.

8.    For the reasons stated herein, the Product is unlawfully misbranded and illegal.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

10.    Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).  As set forth below, Plaintiff is a citizen of Florida, and Defendant can be considered a citizen of Delaware. Therefore, diversity of citizenship exists under CAFA and diversity jurisdiction, as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A). Furthermore, the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

11.    This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoings alleged herein occurred in Florida.  Defendant also has a sufficient minimum contacts with Florida, and has otherwise purposely availed itself of the markets in Florida through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in this district, and Plaintiff purchased the subject Product of this action in this judicial district, and resides in this judicial district.

13.     This Court also has jurisdiction over this class action pursuant to Florida's Deceptive and Unfair Trade Practices Act, FLA. STAT. §§ 501.201, et seq.

14.     Specifically, FLA. STAT. § 501.211 states, in pertinent part:

> (1)Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

> (2) In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part

15.     Plaintiff's claims are not preempted by Federal law. The Product's label is misleading and deceptive pursuant to Florida's Food Safety Act., FLA. STAT. § 501.001, et seq., which is identical in all material respects to the Food and Drug Administration's ("FDA") Federal Food Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 343, 343-1.

16.     Plaintiff's claims do not seek to contest or enforce anything in Florida's Food Safety Act that is beyond the FFDCA or FDA regulation requirements. Instead, Plaintiff's claims are predicated on the fact that Defendant's naming, labeling, and marketing are misleading, deceptive, and unfair according to Florida's Food Safety Act, but only in regards to the provisions that are identical in material aspects to the FFDCA or FDA regulations already imposed by the Federal Government, particularly, FLA. STAT. § 501.204 which states:

(1)    Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(2)    It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2006.

## PARTIES

17.    Plaintiff is an individual more than 18 years old, and is a citizen and resident of Florida. Plaintiff respectfully requests a jury trial on all claims. Plaintiff purchased the Product in Florida, within this judicial district, during the four (4) years prior to filing of the original Complaint (the "Class Period"). Plaintiff purchased the Product for personal use during the Class Period.

18.    Plaintiff purchased the Product from a Wal-Mart located in Palm Coast, Flagler County, within this judicial district.

19.    Plaintiff paid approximately $2.78 each time she purchased the Product the 64 fl. oz. bottle, in reliance upon Defendant's false labeling, believing that she was purchasing a product consisting predominately of Pomegranate and Cranberry juices, when in fact she received a product consisting predominantly of water and cheap white grape juice concentrate, apple juice concentrate, and plum juice concentrate.

20.    Defendant is a Delaware corporation.

21.    Defendant is a corporation that produces, markets, and sells the Product throughout Florida and nationwide using its name.

## III. FACTUAL ALLEGATIONS

22.     This is a class action seeking redress for Defendants' deceptive practices in misrepresenting and/or omitting the true nature of the Product. Specifically, the Product, which has been packaged, advertised, marketed and sold by Defendant, based on the label and other forms of advertising to Plaintiff and others similarly situated, represented that the primary ingredients in the juice product are pomegranate and Cranberry juice. However, the Product contains very little pomegranate or cranberry juice, a fact that Defendant knew and purposely failed to disclose to its consumers. The Product consists primarily of primarily water and cheap white grape juice concentrate, apple juice concentrate, and plum juice concentrate. To date, Defendant has taken no meaningful steps to clear up consumers' misconceptions regarding the Product.

23.     It is well known that both pomegranate and Cranberry juices are high in powerful antioxidants, recognized for years to be helpful in maintaining health and preventing disease. Pomegranate juice has very high levels of unique polyphenols,[1] potent antioxidants that are especially effective at neutralizing free radicals, helping to prevent cell and tissue damage that can lead to dysfunctions and diseases associated with aging.

24.     Based on laboratory and human pilot studies, the juice of the pomegranate has been effective in reducing heart disease risk factors, including LDL oxidation, macrophage oxidative status, and foam cell formation, all of which are steps in atherosclerosis and cardiovascular disease. Pomegranate juice has also been shown to reduce systolic blood pressure by inhibiting

---

1.     Polyphenols are a class of phytochemicals found in plants.  Phenol is a kind of molecule, a carbon-based structure, and many of them bound together form a polyphenol.

serum angiotensin-converting enzyme, may inhibit viral infections, and may also have antibacterial effects against dental plaque.

25.     Like the pomegranate, the cranberry has become a popular drink among health conscious consumers because of its known high antioxidant capacity. Cranberries are also highly protective to the cardiovascular system and nervous system and are among the fruits with the highest antioxidant activity. With the nutritional and health benefits of pomegranate and cranberry juices becoming widely known, consumer demand for pomegranate and cranberry juices has increased rapidly. It was this enormous new market that Defendant hoped to tap with the sale of its Product.

26.     The Product purports to combine two of nature's most potent antioxidants, pomegranates and cranberries, into a single juice product. However, the truth is that the main ingredients in the Product are neither 100% pomegranate nor Cranberry juice, but instead it is a mixture of cheap water and white grape juice concentrate, apple juice concentrate, and plum juice concentrate.

### The Product's Label

27.     Even though the Product contains very little pomegranate or cranberry juice, Defendant made a tactical marketing and/or advertising decision to create a deceptive and misleading label with many elements not required by state or federal regulations. For example, despite the fact that the Product consists primarily of water and other juices that are significantly cheaper than pomegranate and cranberry juice, Defendant decided to give this juice product the brand name of 100% "Cranberry Pomegranate," and to prominently depict fresh pomegranate and cranberries on the front label. No the fruit juices are listed by name or depicted on the front of the label.

28.     The words 100% pomegranate and cranberry are prominently displayed on the bottle. No other words regarding the other ingredients are prominent. Based on the words and pictures displayed on the front of the bottle, the average reasonable consumer would believe that they are purchasing pomegranate and cranberry juice. However, on the back side of the label, the ingredient's list reveals that water and cheap white grape juice concentrate, apple juice concentrate, and plum juice concentrate are the primary ingredients. This labeling tactic misleads the average reasonable consumer to believe that they are purchasing a product that primary contains pomegranate and cranberry, when in reality, they are being deceived in to paying a price premium for water and cheap juices.  This constitutes an unfair method of competition.

29.     Defendant cannot use the back of the label as a shield to protect it against the deceptive advertising on the front of the label. When the average reasonable consumer sees the front of the Product's label, they are not getting a fair depiction of the Product really is. *Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 939-40 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield for liability for the deception.  Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging").

30.     The following depicts packaging and labeling of the Product substantially similar to the Product purchased by Plaintiff.





31.    Defendant could have given the Product many other names. For example, Defendant could have named this Product "White Grape Juice" or "Apple Juice," as they are the primary juices in the Product. Defendant could have placed prominent pictures of white grapes, apples, and plums alongside the cranberries and pomegranates.

32.     Defendant's decision to name its product "Cranberry Pomegranate," while downplaying its other features, demonstrates its intention to focus consumers on the pomegranate and cranberry juice in the Product while trying to conceal the cheaper juices it primarily contains.

33.     As the label reveals, Defendant made a tactical marketing and/or advertising decision to specifically position to words "Pomegranate" and "Cranberry," with a background evocative of the colors of pomegranates and cranberries, and then to not even list the other cheap juices on the front of the label. The effect of the label is to communicate that the Product is composed primarily of pure pomegranate and cranberry juices. As a result, purchasers, like Plaintiff, are likely to be misled and deceived by reading and relying on the Product's label.

34.     Defendants' labeling of the product amounts to an unfair method of competition because it is calculated to mislead and deceive reasonable consumers.  The deceptive marketing of the Product was done purposely, consciously, and for the specific purpose of deceiving consumers into believing they were getting something more than what they actually received—white grape and apple juice disguised as pomegranate and cranberry juices. The ingredients that actually makes up the majority of the beverage, apple juice, is not touted on the Product's illustration.

### Plaintiff's Claim is Not Preempted

35.     The Product label is misleading and deceptive pursuant to Florida's Food Safety Act, FLA. STAT. §§ 500.01, *et seq.*—identical in all material aspects hereto—to the Food and Drug Administration's ("FDA") Federal Food Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 343, 343-1.

36.     Plaintiff does not seek to contest or enforce anything in Florida's Food Safety Act that is beyond the FFDCA or FDA regulation requirements. Although the FFDCA preempts states

from imposing requirements that are not identical to the FFDCA (21 U.S.C. § 343(g)), the statute does not preempt state law claims that mirror the FFDCA.  58 Fed. Reg. 2462.  Plaintiff seeks to enforce state law claims that impose requirements identical to those imposed by the FDCA.  (R. 182, 188).

37.     The Supreme Court of the United States has ruled on this issue. Plaintiff's claim is predicated on the fact that the naming, labeling, and marketing are misleading, deceptive, and unfair according to Florida's Food Safety Act, but only in regards to the provisions that are identical in material aspects to the FFDCA or FDA regulations already imposed by the Federal Government.  Plaintiff's claim seeks to impose requirements that are identical to those imposed by the FFDCA, 21 U.S.C. §§ 343, 343-1. *See Farm Raised Salmon Cases (Albertsons's v Kanter)*, 175 P.3d 1170 (Cal. 2008), *cert denied* 129 S. Ct. 896 (U.S. 2009) (labeling claims are not preempted if a state's regulations are identical to the requirements of 21 USC § 343, pursuant to 21 USC § 343-1) and (21 U.S.C. § 337, which is the standing provision for the FDCA, "does not impliedly preempt private actions based on violations of state laws").

38.     Under the Florida Food Safety Act, "the manufacture, sale or delivery, holding or offering for sale of any food item that is . . . misbranded" is "prohibited.  Fla. Stat. § 500.04 (1).

> Pursuant to Florida's Food Safety Act:
>
> A food is deemed to be misbranded . . . [i]f its label is false or misleading in any particular[,]. . . if its container is so made, formed, or filled to be misleading. . . . If any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon with such conspicuousness, as compared with other words, statements, <u>designs</u>, or devices, in the labeling, and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use. *Id*. at § 500.11(1)(a), (d), & (f)..

39.     Likewise, Pursuant to the FFDCA, section 21 U.S.C. § 343(a),(d), & (f):

> [a] food shall be deemed to be misbranded . . . if its labeling is false
> or misleading in any particular, or . . . if its container is so made,
> formed, or filled as to be misleading. . . . If any word, statement, or
> other information required by or under authority of this chapter to
> appear on the label or labeling is not prominently placed thereon
> with such conspicuousness (as compared with other words,
> statements, <u>designs,</u> or devices in the labeling) and in such terms as
> to render it likely to be read and understood by the ordinary
> individual under customary conditions of purchase and use.

40.     A simple reading of the plain language of the Florida's Food Safety Act and the FFDCA shows that Plaintiff's claims do not seek to contest or enforce anything in Florida's Act that is beyond the FFDCA or FDA regulation requirements. Instead, Plaintiff's claims are predicated on the fact that Defendants' naming, labeling, and marketing are misleading, deceptive, and unfair according to Florida's Food Safety Act, but only in regards to the provisions that are identical in material aspects to the FFDCA.

41.     Moreover, the express purpose of Florida's Food Safety Act is to "promote . . . uniformity of such state and federal laws." Fla. Stat. § 500.02(1)–(3

42.     Furthermore, on September 13, 2010, in a similar false advertising lawsuit, a jury sitting for the United States District Court Central District of California in *Pom Wonderful LLC v. Welch Foods, Inc.,* Case No. CV 09-567-AHM (AGRx), found that the name, label, packaging or advertising of the 100% Juice Welch's White Grape Pomegranate beverage, which was the subject of that lawsuit, was, although literally true, nevertheless deceptive or had a tendency to deceive a substantial number of actual consumers. The jury further found that Welch's intended the name, label, packaging or advertising to deceive consumers.

43.     Plaintiff's state law claims are aimed at the features of the naming and labeling which are voluntary and not required by the FDA regulations that Defendant selected in order to maximize the label's deceptive impact upon Plaintiff and other consumers. FDA regulations did

not require Defendant to name its product "Cranberry Pomegranate" as opposed to a myriad of other options. Defendant made that decision because of its marketing strategy. Similarly, FDA regulations did not require Defendant to place a depiction of a pomegranates and cranberries that dominates the entire front label in conjunction with the name, without listing any of the other juices. Defendant made that decision because of its marketing strategy. Defendant's marketing campaign is designed to cause consumers to buy the Product as a result of this deceptive message, and Defendant has succeeded.

44.     Had Plaintiff known that the Product was an illegally sold product, she would not have purchased it.

45.     Defendant has violated Fla. Stat. § 500.11(1)(f) (2014), because words, statements, or other information required pursuant to the Florida Food Safety Act to appear on the label or labeling, are not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling, and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

46.     Defendant has violated Florida Food Safety Act § 500.04(1) (2014), which makes it unlawful to manufacture, sell, deliver, possess, hold, or offer to sell any misbranded food.

47.     Defendant has violated Fla. Stat. § 500.115 (2014), which provides "an advertisement of a food is deemed to be false if it is false or misleading in any particular." Defendant's product label constitutes false advertisement pursuant to Fla. Stat. § 500.115 (2014).

48.     Plaintiff does not seek an interpretation of the FDA regulations. Instead, Plaintiff's claims are predicated on the fact that the labeling is misleading and deceptive even if it complies with the minimum requirements set forth by the FDA regulations, as the FDA regulations simply

set a "floor," or "minimum" requirements. Indeed, compliance with the minimum requirements is necessary, but is not sufficient to determine if a product's label is false and misleading, and simply does not provide a shield from liability. *See e.g., Wyeth v. Levine*, 129 S. Ct. 1187, 1202 (2009).

49.     "Compliance with regulations does not immunize misconduct outside the regulatory scope." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 133 F. Supp. 2d 162, 175 (E.D.N.Y. 2001); *accord Sclafani v. Barilla Am., Inc.*, 796 N.Y.S.2d 548 (2005). As in *Sclafani*, some of the elements of the relevant packaging and labeling alleged to be deceptive fall outside the scope of the applicable federal regulations." Making deceptive statements cannot be considered compliance with federal rules, regulations, and statutes. *See People ex rel. Spitzer v. Gen. Elec. Co., Inc.*, 756 N.Y.S.2d 520, 524 (2003).

### Plaintiff and the Class Suffered Damages

50.     As a result of this campaign, the average consumer, unaware that the Product actually contains very little pomegranate and cranberry juices, has purchased the Product believing that the Product is derived primarily from these two juices. The primary ingredients of the Product are actually water and cheap juices, which are much less expensive than pomegranate or cranberry juice and do not contain as many antioxidants as those juices.

51.     Consumers' confusion is reasonable given that some companies are selling juices advertised as pomegranate and/or cranberry juice which truly are composed either entirely or primarily of those juices. For example, R.W. Knudson Just Pomegranate, POM Wonderful Pomegranate and Odwalla PomaGrand Pomegranate Juice are juice products that actually contain primarily pomegranate juice.

50.     As a result of Defendant's representations and/or omissions, Plaintiff paid for product she would not have otherwise purchased and/or overpaid for the Product she purchased

because the value of the Product was diminished at the time of sale. Had Plaintiff been aware that the Product included very little pomegranate or cranberry juice, she would not have purchased it, would have paid less for it, or would have purchased another juice product. For all the reasons stated herein, Plaintiff suffered injury in fact and has lost money or property as a result of Defendant's actions.

51.     As a result of Defendants' false and misleading statements and failures to disclose as well as Defendant's other conduct described in this Complaint, Plaintiff and Class members bought hundreds of thousands of units of the Product and continue to suffer injury as a result of Defendants' misrepresentations and/or omissions.

52.     Defendants' conduct as alleged herein violates, *inter alia,* the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Florida Statutes.

53.     This action seeks, among other things, economic damages, declaratory, and equitable and injunctive relief.

54.     Because the Product is unlawfully misbranded, and there is no market value for an unlawful product in the legal marketplace, and because Defendant's conduct constitutes an unfair method of competition, Plaintiff and the Class seek damages equal to the aggregate purchase price paid for the Product during the Class Period.

55.     Alternatively, Plaintiff and members of the Class paid a price premium for the Product over other similar products that do not misleading claim to primarily consist of pomegranate and cranberry juice, when they actually primarily consist of water and other cheaper juices. For example, based upon information and belief, the Product retails at a higher price than Defendant's virtually identical Great Value Apple Juice product by an average 48% percent price differential. Thus evidencing Defendant's unfair business practice of using cheaper and less

expensive ingredients, and then charging consumers for "flavors" and purportedly more expensive and nutrient rich juice. As a result, Plaintiff and the Class are entitled to damages in the amount of the difference between the premium purchase price charged for the Products and the true market value of the Product without its misbranded features.

56.     At a minimum, Plaintiff and class are entitled to restitution of all amounts retained by Defendants, and disgorgement of all ill-gotten profits from Defendants wrongdoing.

57.     Plaintiff also seeks declaratory and injunctive relief putting an end to Defendant's misleading and unfair business practice. If Defendant stops its unfair practice and/or engages in a corrective advertising campaign, Plaintiff would purchase the Product in the future.

## CLASS ACTION ALLEGATIONS

58.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as Statewide Classes as follows:

a. **Statewide Classes.** Plaintiff brings this action on behalf of himself and on behalf of statewide classes, as follows:

      i. **Florida Classes.** Pursuant to Rule 23(a) and (b)(2), all Florida residents who purchased the Products identified in Plaintiff's Complaint, during the class period, for personal use and not resale, through and to the date Notice is provided to the Class;

      ii. Pursuant to Rule 23(a) and (b)(3), all Florida residents who purchased the Products identified in Plaintiff's Complaint, during the class period, for personal use and not resale, through and to the date Notice is provided to the Class.

59.     Plaintiff respectfully reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.  Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff

62.     Defendant's representations, practices and/or omissions were applied uniformly to all members of all Classes, including any subclasses, so that the questions of law and fact are common to all members of the Class and any subclass.

63.     All members of the Classes and any subclasses were and are similarly affected by the deceptive advertising for the Product, and the relief sought herein is for the benefit of Plaintiff and members of the Classes and any subclasses.

**Numerosity—Federal Rule of Civil Procedure 23(a)(1)**

64.     Based on the annual sales of the Product and the popularity of the Product, it is readily apparent that the number of consumers in both the Classes and any subclasses is so large as to make joinder impractical, if not impossible. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and (b)(3)**

65.     Questions of law and fact common to the Plaintiff Classes and any subclasses exist that predominate over questions affecting only individual members, including, *inter alia*:

66.     Whether Defendant's business practices violated FDUTPA, FLA. STAT. §§ 501.201, *et seq.*;

67.     Whether the Product consists primarily consists of pomegranate and cranberry juice;

68.     Whether the Product's label representations and omissions are materials to a reasonable consumer;

69.     Whether the Products' label representations and omissions is likely to deceive a reasonable consumer;

70.     Whether a reasonable consumer is likely to be deceived by the Product's advertising and label design;

71.     Whether Plaintiff and the Classes have suffered damages, and the proper measure of those damages;

72.     Whether Defendant was unjustly enriched by the sale of the Product;

73.     Whether Plaintiff and the Classes are entitled to injunctive relief; and

74.     Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

### Typicality—Federal Rule of Civil Procedure 23(a)(3)

75.     The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Classes and any subclasses, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Classes and any subclasses is common to the members of each. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

**Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)**

76.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Classes and any subclasses.

77.     Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. The Class' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**

78.     Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the final injunctive relief and declaratory relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of consumers of the Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**Superiority—Federal Rule of Civil Procedure 23(b)(3)**

79.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

80.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any

difficulties that might be argued with regard to the management of this class action. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

81.     Certification of this class action is appropriate under Rule 23, *Federal Rule of Civil Procedure*, because the questions of law or fact common to the respective members of the Classes and any subclasses predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

## FIRST CAUSE OF ACTION:

### FOR VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ.*

82.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

83.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*. The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

84.     The sale of the Product at issue in this cause was a "consumer transaction" within the scope of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*.

85.     Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes.* Defendant's Products are a "good" within the meaning of the Act. Defendant is engaged in trade or commerce within the meaning of the Act.

86.     Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

87.     Section 501.204(2), *Florida Statutes* states that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Defendant's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably under the circumstances and, therefore, violate Section 500.04, Florida Statutes and 21 U.S.C. Section 343.

88.     Defendant has violated the Act by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. Specifically, Defendant has represented that the Product primarily consists of 100% pomegranate and cranberry juice, when in fact it primarily consists of cheap filtered water and other juices.

89.     Plaintiff and Class Members have been aggrieved by Defendant's unfair and deceptive practices in that they purchased and consumed the Product.

90.     Reasonable consumers rely on Defendant to honestly represent the true nature of the ingredients and composition of the Product it sells.

91.     Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing the Product was something it was not.

92.     The knowledge required to discern the true nature of the Product is beyond that of the reasonable consumer by looking at the Product's display panel.

93.     Federal and State Courts decide omission and misrepresentation matters regularly, including those involving a practices that are likely to deceive reasonable consumers. Accordingly, the issue of whether the Statements are misleading to a reasonable consumer is well within the jurisdiction of the Court.

94.     The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as described above.

95.     Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiffs and the Class seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Defendant, and for restitution and disgorgement.

96.     Additionally, pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiffs and the Class make claims for damages, attorney's fees and costs.

**SECOND CAUSE OF ACTION:**
**NEGLIGENT MISREPRESENTATION**

97.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

98.     Defendant has negligently represented that the Product primarily consists of 100% pomegranate and cranberry juice, when in fact it primarily consists of cheap filtered water and cheap juices.

99.     As a result, Defendant has misrepresented a material fact to the public, including Plaintiff and Class Members, about the Product.

100.   Defendant knew or should have known that these omissions and affirmative Statements would materially affect Plaintiff and Class members' decisions to purchase the Products.

101.   Plaintiff and other reasonable consumers, including the Class members, reasonably relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Product.

102.   The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business.

103.   Plaintiff would not have been willing to pay for the Product if he knew that it primarily consists of cheap water and other juices, and that it did not have the true value Plaintiff was lead to believe it had.

104.   As a direct and proximate result of these misrepresentations, Plaintiff and members of the Class were induced to purchase and consume the Product, and have suffered damages to be determined at trial in that, among other things, they have been deprived of the benefit of their bargain in that they bought Product that was not what they were represented to be, and they have spent money on a Product that had less value than was reflected in the premium purchase price they paid for the Product.

### THIRD CAUSE OF ACTION:
### UNJUST ENRICHMENT

105.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

106.   In its marketing and advertising, Defendant has made false and misleading Statements and/or omissions regarding the Product.

107.   Defendant has represented that the Product primarily consists of pomegranate and cranberry juice, when in fact it primarily consists of cheap water and other juices.

108.   The Product is marketed directly to consumers by Defendant.

109.   Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Product. Defendant accepted and retained the benefit in the amount of the purchase price and/or profits it earned from sales of the Product.

110.   Defendant profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain said benefit.

111.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions, as set forth herein. Defendant is aware that the Statements, claims and/or omissions that it makes about the Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

112.   Plaintiff and Class members do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

113.   Accordingly, the Product is rendered valueless such that Plaintiff and Class members are entitled to restitution in an amount not less than the purchase price of the Products paid by Plaintiff and Class members during the Class Period.

114.   Plaintiff and Class members are entitled to restitution of the excess amount paid for the Product, over and above what they would have paid if the Product had been adequately advertised, and Plaintiff and Class members are entitled to disgorgement of the profits Defendant derived from the sale of the Product.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1.    For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

2.    For an award of declaratory and equitable relief as follows:

    (a)    Declaring Defendant's conduct to be in violation of FDUTPA and enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the marketing, advertising and sale of the Products in such manner as set forth in detail above or making any claims found to violate FDUTPA or the other causes of action as set forth above;

    (b)    Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

    (c)    Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

    (d)    Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described herein.

3.    For actual damages in an amount to be determined at trial for all causes of action;

4.    For an award of attorney's fees and costs;

5.    For any other relief the Court might deem just, appropriate, or proper; and

6.    For pre- and post-judgment interest on any amounts awarded.

## XII. DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all issues so triable.

**Respectfully Submitted By,**

Dated: February 25, 2015

*/s/  Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
5400 S. University Drive, Ste. 413
Davie, FL 33328
Tel:    (954) 889-3359
Fax:    (954) 889-5913
jeggnatz@eggnatzlaw.com
mpascucci@EggnatzLaw.com

*Trial Counsel for Plaintiff and the Proposed Class*